Next on our docket is United States v. Brooks, it is 23-6145, Ms. Thuy, am I pronouncing it right? Yes, Thuy. I know you've appeared before me. I want to make sure I get it right. Thank you. And you've got two minutes. Is that correct? Correct. Yes. Thank you, Your Honor. Thank you. May it please the Court, a year ago today, actually, Mr. Brooks' arguments on appeal became ripe when probation, through the exercise of its delegated authority, denied him permission to have contact with his children. I'm sorry. So is he still in the... It's not the halfway point. The RRC, the residential... No. Actually, after he left the RRC, he has been living in a motel in Beacon, New York, which is three hours from his home, where his family is. Okay. May I go back to the probation office? Because my understanding from your briefs is that they advise that Brooks and his wife should be preparing children for no contact with their father. Does that meet the standard of a no, like we are denying a request to go home? In other words, if this question was squarely presented to probation, will he be allowed to go home? Do they think that they have answered that question in the negative? Well, they did so through... I'm not sure if I understand the question correctly. They said no by... Extending the time in the residential... Extending the time in the RRC, and then thereafter, requiring him to live elsewhere, where he's living in a hotel. And I want to emphasize that not only did that denial through the exercise of their authority not allow him contact with his children, but it created a host of collateral consequences that weren't foreseeable at the time of sentencing. He's got to pay for that hotel through disability benefits. It's a strain on the family, on his wife, who has to take care of the children. The record shows that at some point the probation told him that the ban on contact with children extended to his own children. When was that? So that's in Special Condition 1. It is written to include his children. What was the basis for that? Was there any indication in the record that he'd ever had any appropriate contact with his children? No. No, Your Honor. Was there any suggestion in the record, evidence in the record, that in fact he'd had any inappropriate contact with any children? Other than the victim of the offense during that 13-day period during the offense conduct. So it was the 15-year-old? Yes. Yes. That was the only contact. Okay. So I hear that you... But what was he... I know they were exchanging videos. What else occurred? Actually, Your Honor, it was just pictures. There were seven images that constituted child pornography that the victim had, that she had shared with my client and other... So my question went to contact, and your response, I wasn't entirely clear about. No contact with the victim that led to his conviction? No, he had no contact. She lived in Georgia. He lived in Hammond, New York. It was virtually impossible for him to have contact with her, given his intellectual limitations and his inability to travel there. I know they did communicate in that way, so that matters. I understand. And insofar as we can glean anything from the record here, his family wants him back. Is that right? I'm sorry? Insofar as we can answer that question based on the record before us, his family wants him back. Yes, they do. Is that right? Yes. And that was a big factor in him receiving the minimum sentence by the district court. The court stated more than once on the record that he was very... They wanted him to be able to reunite with the family. The judge was very impressed by the family's support, the wife, the children, and he wanted him to get home as soon as possible to be reunited with his family. Nothing in those statements could have indicated that what ended up happening would have happened, that it would have just been prepare the kids for no contact, and that's that. So contrary to the government's position, the arguments they're raising for the first time on appeal, because they did not engage in the argument below, this is that we are not here challenging the condition itself. We're challenging probation's exercise of the delegated authority and the district court's failure to intervene when we sought modification. Wait a minute. I'm sorry. What do you mean you're not challenging the condition itself? I don't follow that. Well, the court certainly has the authority. The condition said he couldn't have contact with his own children. Is that correct? Well, it's without probation's permission. So what's the challenge? What's the challenge? The challenge is that we are seeking to modify the condition once probation acted, once they acted on that authority and denied him the permission by just saying, no, get ready for no contact. What was Mr. Brooks to do after being present at sentencing and having the district court state its intention that he wanted the family reunited? He wanted him to be back with his family, and then that was just cut off without explanation. Footnote 14 of this court's opinion in the Kuntz case, that speaks exactly to where we are right here. Okay. So I thought you were going there. So I want to make sure that we're clear. I understood from your briefs for you to be raising two potential concerns for modification. The first was one you were very close and careful to not crossing any lines to, which is that the condition itself infringed upon his fundamental right to associate with his own children. I'm assuming you didn't step into that land because of the law that would strip us from jurisdiction. But the second one was the fact that he was homeless and it wasn't modified, and there is nothing in the record. The district court just denied it by a text order saying deny, supporting it. Now I'm hearing that you're making a Kuntz argument suggesting that there's a delegation problem, which you may be right about. I'm pointing that out. But how can we answer the delegation problem without challenging it in the first instance, which you were very careful not to do? So tell me how we harmonize all those two pieces. I'm sorry about that. Don't be sorry. This is a tricky issue. Kuntz made them out. Wait. I am not saying that it's illegal for the court to delegate that authority. The court can delegate that authority. The court has delegated that authority. And once they did and probation acted and exercised that authority, it interfered with Mr. Brooks' right to have contact with his children. And under 3583E, as well as Rule 32, he has the right to go back to the court and say, can we modify this? Because the way that they are exercising the authority that you gave them, and we're not saying that the court can't do that, we're seeking modification. Because there's nothing in the record that supports him being barred from having prohibited contact with his children, which we are now on a year. And given what the court's intention was at sentence, Mr. Brooks can't certainly be in a position to just throw his hands up and be like, OK, well, I guess I just can't see my kids for five years, even though the court's intention stated this purpose. Well, I'm going to ask your colleague the same question. But if we were to say that there was a Kuntz-like problem, could this panel do anything about it, like an improper delegation? No. And that's not our argument. OK. No. But your position would be that even if the- But that footnote covers this exact situation, where the authority is delegated, and that's permissible. And now we can come back to the district court and say, this is how they're exercising the authority you gave them, and we think it needs modification for these reasons. Paul, let me, before you sit down, let me be sure I'm clear on this. What specifically are you asking us to do? So I am asking that this case be remanded for the court to address the modification that we put in front of the court to allow Mr. Brooks to have contact with his children as the court intended at the time of sentencing, because probation is arbitrarily exercising that authority without any basis in the record that supports it for banning him from being with his kids. And given these collateral consequences, this is hard because we don't have a real record here, because the government didn't engage and the district court didn't engage. So I'm sort of coming here and saying it's hard for you- There's nothing there. It's literally a deny. It's a deny. Yeah. That's all that it says. Yes. Yes. Okay. Thank you. Good morning, Your Honor. This is the court, Rajiv Dosanjh, United States. Let me ask you this, counsel. Do you object to a remand to get some findings by this district judge about why this condition is being imposed? Your Honor, we argue in our brief that- I didn't ask you what you argued in your brief. Well, Your Honor, we wouldn't strongly oppose that. I think what we have argued in our brief is answering the claims that were actually raised here, which is that the district court abused its discretion at sentencing by imposing this condition in the first place. Well, that's not how I read the record here. The record here shows circumstances that have changed since sentencing. At the sentencing, it was made perfectly clear that the man had a supportive family. The judge factored that in, fashioning the sentence he fashioned. And after this man was released from incarceration, the family welcomed him back, which is something that the sentencing judge hoped would occur. Your Honor- Now, all of a sudden, he's in some godforsaken motel, three hours away from a family who wants him back. Why is that? Your Honor, I think- Well, first of all, I think just to clarify the timeline here, he asked for modification before he was released from the residential reentry center. And so that was what- that's the decision that is before this court. It's not- he hasn't gone back to the district court. Can the government give me one good reason why this man should not be reunited with his wife and his children- Your Honor, he's a sex offender with a demonstrated interest in the age of girl that is exactly the age of his daughters right now. His argument at sentencing was, I need to be- my wife works all the time. I need to be alone to take care of them. The district court heard all these arguments. That is the reason why- They heard him at sentencing, right? Heard him at sentencing. And that's really what's at issue here because of the timing of when they made this request and the arguments they're raising before this court. All of which go to whether it was improper for the district court to impose this condition in the first place. If he wants to go back and now ask for modification, that is his prerogative. We're not saying that- Well, I'm sorry. You would not- We would not- If he went back and asked for a modification, what would be the government's position? Your Honor, we would have to take the advisement of the probation office, which is the one which is having constant contact with him. The government- this is really between the probation office- Do we have a Coons problem here? I don't think so, Your Honor. Can you explain why, please? Well, Your Honor, this condition that we have, first of all, that issue is not before the court. There is no suggestion- We're trying to figure this out. We're trying to reach a right answer. So, please, is there a Coons problem? I don't think there is, Your Honor, because this is- Again, this is- If you suggest there's a Coons problem, that Coons problem would have had to be at the imposition. But given now that the probation office is supervising this defendant, it has to have the discretion to take into account, using its own expertise, whether he has made a successful adjustment to being in the community. And if we're going to go outside the record, Your Honor, I am aware of information that he was given the opportunity to have supervised visits, supervised by his wife, on weekends with his kids. He turned that down. So, I would be very careful to just follow the assumptions that are being made about what the probation office meant. What it meant was, when it said, prepare your kids for no contact, don't suggest to them that immediately, once he gets out of prison, after being in prison for approximately five years, that he's going to go right back into the house without- I'm sorry. I'm sorry. I, too, am not sure what to- I think there's something for us to grapple with, with respect to that statement. So, is your argument that it's not ripe because it wasn't requested? No. I don't want the court to misunderstand what the probation office said. It was not denying potential- Right. So, do we have a ripeness problem because it wasn't actually denied? I'm trying to figure out what to make of that sentence. What he asked for was a modification to allow him, just to get rid of this condition, to allow him to go back to the home without any supervision, without any- just to go right back. Well, we're reading different records, because the record I am reading indicates that this man wanted to return to his family. His family wanted him back. Is that- That's true, Your Honor, but that's not only the- that's not the only consideration the probation office has to think about. It also has to think about the safety of the kids. Did the probation office do an assessment? Assessment of- Risk assessment. Sex offender risk assessment. Your Honor, I'm not aware of whether they did or not. No assessment was made? Well, Your Honor, they didn't have a chance with this decision. They didn't have a chance to do that because he asked for the modification before he was released, before he began supervision. They had no contact with him. They do it while he's incarcerated. It happens all the time. By the probation office, Your Honor? I'm not sure if that happens by the probation office. The probation office is the one that's going to be supervising him. They had no contact with him, and if Your Honor- if the court would like, I can provide the email correspondence between the defense counsel and the probation office and the government that is referenced in the letter, which clearly shows the probation office was not allowed to have contact, just not immediately. As soon as he begins supervision, he gets to go right back in the home. That was not allowed, and the district court refused that modification. Now, I understand that there's no explanation for that, but I think in considering the lack of explanation, you also have to think about the arguments that were being made, and they were purposely- So help me out, though. If we were a man to ask the district court to make sure that it is considering all of the factors, this would be the government's- the government would have an opportunity, the probation would have an opportunity to be able to explain, and then we would be able to figure out if there was an actual risk to those two particular children who he would be home alone with. Is one still being homeschooled? Your Honor, I'm not sure of that right now. But in any event, I think there is no dispute that there would be a lot of unsupervised time with this child, and I think the reason we are in this predicament is we have no idea what the district court intended to do. Your Honor, we would not oppose a remand for the further explanation. What we are opposed to is any ruling from this court that suggests that the condition itself was improper as imposed at sentencing, because that was never appealed, was never even rejected to, and the district court at sentencing, in the same- while it was talking about the fact that he has the support of his family, then expressly stated, any contact with your children will have to be supervised by probation, will have to be approved by them. And again, there is no objection. Once he doesn't appeal that, for him to use modification to- he's absolutely right that he can seek modification, he doesn't have to show changed circumstances. That's the Parisi decision. And he can ask the district court to change its mind. But on appeal, to suggest that the district court abused its discretion by not modifying. I think- Well, the district court abused its discretion by not saying anything. Your Honor, again- He had an obligation if he- This is not a kind of restriction we see with any kind of frequency. He abused his discretion by separating by ordering this man to stay away from his family without giving us one sentence of reasoning about it. If the court's decision is confined to the modification decision, what we are suggesting is that if you're going to say that this condition was not explained in sentencing, that ship is sailing. But she's- We're not talking about sentencing, we're talking about the denial. The denial of the modification. And, Your Honor, this court is not- You don't defend that, do you? Well, Your Honor, I think- The ones that denied? Because of the nature of the arguments that were made to the district court, which essentially said, you got it wrong in sentencing. That's what the argument was because of the timing. If the court- If it wanted to right now- If the defendant wanted to go right now and say, after this case is settled, we would like the modification, he's had a year on supervised release, he's done really well. In that situation, I think the district court would have more of an obligation to explain it. Okay, so, but right now, I'm worried that you are arguing for a problem or a solution in search of a problem. Right now, your counsel, opposing counsel, is taking the position that they are not challenging the imposition of the special condition. So, if they are not challenging the imposition of the special condition, then right now, at least in the conversation we are having, we are discussing the need to know more and whether or not we can review the appropriateness of the denial of the modification under a standard that is very, very favorable to the district court, but one that we literally have denying. I mean, that's what we have in the record. Right, Your Honor. And again, I would suggest, though, that there is case law that suggests that if you can assess the reasons from the record- No, I'm very familiar with that. We need to decide if there is enough in there to have made that okay. And what we are saying is that you need to take into consideration what arguments were actually made to the district court. And the district court was essentially presented even before supervision began with a letter saying you got it wrong. The condition violates his constitutional rights. It doesn't satisfy the 3553A factors. That was what was presented. I mean, and I also understand the district court is going to expect you to defend the decision. So, I think you've done it capably. I think. Are we good? Okay. Thank you. Thank you, Your Honor. Appreciate it. The government is taking issue with the timing of when this modification request was made. The modification request was made because he couldn't go home. He became homeless by this decision. When? When he was in the residential re-entry center still as a BOP inmate and probation was meeting with him to talk about his terms of supervision and we're like, you can't go home. So, you have to stay here extra. Sign this modification. And that's when we came forward and asked the court to modify it. Because of the collateral consequences do matter. That's an impact. When that decision that they're making causes him to be homeless. Your Honor, you're right. We're sort of in this guessing game because of what the record is here. And I would ask that it be remanded for a hearing for an opportunity for Mr. Brooks to be heard. I mean, we are now at a year. He has not had any violations. He's complied with his terms. When is, you know, probation going to make that exercise that authority to let? When did he go to the residential home? Remind me of that date. So, he served his last five months of his prison sentence at the RRC. So, that was in Albany, New York. So, his, whoever was supervising him started to meet with him while he was still serving that. Started that what date? And then, they added on. Started that what date? Okay, so, he was done with his actual sentence February 14th last year. So, 23? Yes. So, the five months preceding that, he was still a BOP inmate. And then, on the 14th, he became a supervisee. And, that time was extended a month and then he went to the motel. And he went to the motel when? So, that would have been like March 14th. Thank you, your honors. Thank you. Thank you both. Thank you for coming in. Thank you.